THE PEOPLE OF THE STATE OF NEW YORK ex rel. INTER-
BOROUGH RAPID TRANSIT COMPANY, Appellant, *v.*
FRANK A. O'DONNEL et al., as Commissioners of Taxes
and Assessments of the City of New York, Respondents.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. INTER-
BOROUGH RAPID TRANSIT COMPANY, Appellant, *v.*
FRANK RAYMOND et al., as Commissioners of Taxes
and Assessments of the City of New York, Respondents.

Tax — New York (city of) — construction and effect of section
35 of the Rapid Transit Act exempting certain machinery,
fixtures and appurtenances of street railways from taxation.

1. There is no inflexible and universal rule by which to deter-
mine under all circumstances whether that which was originally
personal property has become part of the realty through being
affixed thereto and used in connection therewith, and it is well
settled that in many cases, general and otherwise controlling
principles may be avoided by agreement and the character of per-
sonal property as such be maintained in spite of circumstances
which without such agreement would turn it into real property.

2. Plaintiff claims exemption from taxation based on section 35 of
the so-called Rapid Transit Act (L. 1891, ch. 4; amd. L. 1896, ch. 729),
which at the time of the assessment in question read as follows:
"The equipment to be supplied by the person, firm or corporation
operating such road shall include all rolling stock, motors, boilers,
engines, wires, ways, conduits, and mechanisms, machinery, tools,
implements and devices of every nature whatsoever used for the
generation or transmission of motive power and including all
power houses, and all apparatus and all devices for signalling and
ventilation. Such person, firm or corporation shall be exempt
from taxation in respect to his, their or its interest under said con-
tract and in respect to the rolling stock and all other equipment of
said road, but this exemption shall not extend to any real property
which may be owned or employed by said person, firm or corpora-
tion in connection with the said road." *Held*, that this section,
when fairly construed in its entirety, means that the machinery
and apparatus enumerated as equipment when installed in the
power houses shall continue to be regarded as personal property;
that the term "real property" in the exception to the exemption

clause was not intended to include such equipment, but that it remains exempt from taxation.

3. The fact that on two occasions the respondents and their predecessors in office in assessing the relator have granted exemptions to the latter in line with those now claimed, while not to be regarded as conclusive in this proceeding, shows a practical construction of the statute which is entitled to consideration.

4. As to the power houses it is held that they, by the final clause of the section declaring that the exemption should "not extend to any real property which may be owned or employed by said person, firm or corporation in connection with the said road," were withdrawn from the properties enumerated as exempt in the earlier part of the section and are, therefore, subject to taxation.

5. Relator sold power produced at times in excess of its requirements by equipment which at other times or in the near future it might be required to use to its full capacity for the proper operation of its road. *Held*, that neither such sale nor an incidental exchange of power with another company deprived relator of any exemption which it otherwise enjoyed.

*People ex rel. Interborough Rapid Transit Co.* v. *O'Donnel*, 143 App. Div. 907, modified.

*People ex rel. Interborough Rapid Transit Co.* v. *Raymond*, 143 App. Div. 907, modified.

(Argued April 25, 1911; decided June 6, 1911.)

APPEAL, in the first above-entitled action, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 24, 1911, which affirmed an order of Special Term substantially denying relator's petition to have canceled an assessment upon certain of its property in the city of New York for the year 1905, and confirming said assessment.

Appeal, in the second above-entitled action, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 24, 1911, which affirmed an order of Special Term substantially denying relator's petition to have canceled an assessment upon certain of its property in the city of New York for the year 1906, and confirming said assessment.

The relator is, and at the times involved was, engaged in operating the subway roads constructed by the late

John B. McDonald under contract with the city of New York, and as assignee of that portion of said contract which related to the equipment and operation of said roads.

In fulfillment of its contract for equipment and operation the relator acquired several pieces of valuable real estate in the city of New York whereon it erected power houses in which it installed machinery for the generation and supply of electrical power to be used in operating its road, and it is over the assessment of this property that the present contest has arisen.

The aggregate value of each class of property as fixed for purposes of assessment amounted to several millions of dollars. The power houses are permanent and very substantial buildings, constructed for the most part of brick, stone and steel with deep foundations. The machinery consisted for the most part of ponderous and complex apparatus installed in and affixed to the power houses for the purpose of generating and supplying electrical motive power on the relator's road. It was stipulated in regard to the latter as follows: "Every detail of construction of the main power house and substations was adopted in view of the possibility that each and every appliance in them might become worn out or obsolete and so that they could by taking them apart be removed from the power house or substations without damage or injury to the walls or foundation of the buildings, and each of the pieces of machinery may be so removed without damage to walls or foundations of the buildings," and also "The machines and apparatus were brought to the buildings in parts and there assembled and erected, and to remove them it would be necessary to take them apart and separate them into the component parts in which they were supplied."

Originally the relator contended that all three classes of property, land, power houses and machinery, were exempt from taxation, but its contention in the end has

practically narrowed down to the claim that only the power houses and machinery were exempt. This claim to the exemption was and is based on section 35 of the so-called Rapid Transit Act, chapter 4, Laws of 1891, as amended, which at the time of the assessment in question read as follows: "§ 35. The equipment to be supplied by the person, firm or corporation operating such road shall include all rolling stock, motors, boilers, engines, wires, ways, conduits and mechanisms, machinery, tools, implements and devices of every nature whatsoever used for the generation or transmission of motive power and including all power houses, and all apparatus and all devices for signalling and ventilation. Such person, firm or corporation shall be exempt from taxation in respect to his, their or its interest under said contract and in respect to the rolling stock and all other equipment of said road, but this exemption shall not extend to any real property which may be owned or employed by said person, firm or corporation in connection with the said road."

*Henry W. Taft* and *Francis Smyth* for appellant. Under the rapid transit statute and contract a clear right of exemption from taxation is granted to the relator with regard to the power houses, machinery and other equipment of the rapid transit railroad. (L. 1891, ch. 4; L. 1896, ch. 729, § 4; *People ex rel. E. G. Co.* v. *Barker*, 81 Hun, 22; *H. C. L. & P. Co.* v. *Johnson*, 37 App. Div. 257; *People ex rel. Nat. Starch Co.* v. *Waldron*, 26 App. Div. 257; *People ex rel. N. Y. El. R. R. Co.* v. *Comrs. of Taxes*, 82 N. Y. 459; *People ex rel. N. Y. & H. R. R. Co.* v. *Comrs. of Taxes*, 101 N. Y. 322; *People ex rel. Van Nest* v. *Comm.*, 80 N. Y. 573; *People ex rel. R. T. Co.* v. *Williams*, 200 N. Y. 93; *People ex rel. Met. St. Ry. Co.* v. *State Board*, 199 U. S. 1; *People ex rel. Int. R. T. Co.* v. *State Board*, 126 App. Div. 610; 195 N. Y. 618; *People ex rel. T. U. R. R. Co.* v. *Carter*, 52 Hun, 458.) Neither the contract nor statute is

to be construed strictly against the relator. (*People ex rel. Roosevelt Hospital* v. *Raymond,* 194 N. Y. 189; *R. F. L. Co.* v. *Hoyt,* 109 App. Div. 119; *Gillette* v. *Bank of Am.,* 160 N. Y. 549; *White* v. *Hoyt,* 73 N. Y. 505; *State* v. *B. & O. R. R. Co.,* 48 Md. 49; *Nichols* v. *N. H. & N. Co.,* 42 Conn. 103.) The use of the tie line between the subway power station and the power station of the Manhattan Railway Company does not affect the exemption. (*City of New York* v. *Interborough R. T. Co.,* 125 App. Div. 437; 194 N. Y. 528.)

*Archibald R. Watson, Corporation Counsel* (*Curtis A. Peters* and *William H. King* of counsel), for respondents. The land upon which the main power house and sub-station power houses were situated was not exempted from taxation by section 35 of the Rapid Transit Act, and the section so stated in plain, unambiguous words. (L. 1891, ch. 4; L. 1894, ch. 752; L. 1896, ch. 729; L. 1900, ch. 616; L. 1905, ch. 599; *People ex rel. Y. M. C. A.* v. *Sayles,* 32 App. Div. 197; 157 N. Y. 677; *Medical Society* v. *Neff,* 34 App. Div. 83; *People ex rel. D. K. E. Society* v. *Lawler,* 74 App. Div. 553; 179 N. Y. 535.) The buildings of the main power house and sub-station power houses and such of the machinery therein as was affixed to the freehold were real property, and were not exempted from taxation by section 35 of the Rapid Transit Act, under the plain meaning of its language. (*People ex rel. I. R. T. Co.* v. *State Board,* 126 App. Div. 614.)

Hiscock, J. The ultimate question of importance in this case is whether large and permanent power houses with deep foundations, and massive machinery installed in and affixed to such power houses for generating electrical motive power for relator's subway road, are to be regarded as real property for purposes of taxation. This question which under ordinary circumstances would be readily and quite surely solved in the affirmative is made

debatable in this case by certain provisions of the Rapid Transit Act which are applicable and controlling.

As assignee of the original contractor the relator undertook to equip and operate the subway roads constructed under contract with the city of New York. In fulfillment of its obligations it purchased the lands, erected the power houses and installed the machinery above referred to. Under the provisions of section 35 of the Rapid Transit Act already quoted at length, the equipment to be supplied by one operating the road and which primarily was made exempt from taxation specifically and clearly included the power houses and machinery. The controversy arises over the final exception or proviso engrafted on the exemption that it "shall not extend to any real property which may be owned or employed * * * in connection with the said road." This clause presents the query whether under the circumstances the legislature intended to or in fact did cover power houses and machinery by the general term "real property," and thereby withdraw them from the exemption which had just been given.

It seems so clear that the lands owned by relator are assessable that I do not deem it necessary to discuss that item of the assessment originally but not now seriously complained of. Of the other two items, I shall consider first that of the machinery and apparatus installed in the power houses.

There is no inflexible and universal rule by which to determine under all circumstances whether that which was originally personal property has become part of the realty through being affixed thereto and used in connection therewith. As we all know, the rule differs in different relationships. It is broader and stricter, for instance, in transforming personalty into realty as between an ordinary vendor and vendee than as between a landlord and tenant in the cases of improvements made by the latter. Many times other facts are so indeterminate

that the intention of the parties becomes almost a controlling element in determining whether the property in question has become a fixture. But beyond this it is well settled that in many cases, general and otherwise controlling principles may be avoided by agreement and the character of personal property as such be maintained in spite of circumstances which without such agreement would turn it into real property. Perhaps the latest illustration of this rule in this court is in the case of *Davis* v. *Bliss* (187 N. Y. 77) where we held that the vendor of an engine might by express agreement preserve its character as personal property against his vendee and the latter's vendor under contract of the real estate, even though it had been so affixed as to become a part of the realty under the rules ordinarily applicable.

Applying these considerations to the facts in this case, it is apparent that even though the equipment in question here, consisting originally of personal property, ordinarily would have become part of the realty by reason of its attachment thereto, its character as personal property might be preserved by proper agreement or provision.

The Rapid Transit Act provides for the ultimate sale by the relator to the city of its real property, and undoubtedly it might have provided that the equipment in question should continue to be regarded as personal property and not come under this clause. In like manner the legislature could provide that for purposes of taxation as between the relator and the city this equipment should preserve its character as personal property under the exemption section which has already been quoted and not become real property. It might do this in express language or by implication on a fair interpretation of the entire statute. I think that it has done the latter; that section 35, already quoted, when fairly construed in its entirety, means that the machinery and apparatus enumerated as equipment when installed in the power houses shall continue to be regarded as personal prop-

erty, and that it was not intended to include them in the term "real property." in the exception to the exemption clause but that they remain exempt from taxation.

If we hold that the term "real property" in the exception does mean and include machinery and apparatus which have been installed in the power houses, then the legislature has been guilty of rather absurd legislation, and that fault is not to be assumed or found if we can avoid it. It has enumerated at length several classes of articles, including those now under discussion as the "equipment" to be supplied by the corporation operating the road. It has expressly provided that such corporation shall be exempt from taxation "in respect to the rolling stock and all other equipment of said road," and then it has added the clause "this exemption shall not extend to any real property which may be owned or employed by said * * * corporation in connection with the said road," which, if the words "real property" are construed as urged by respondent, appears to wipe out the entire list of exemptions with the exception of rolling stock.

Undoubtedly the legislature is to be charged with knowledge that much of the equipment to be supplied in the operation of the subways although originally personal property, would be so affixed to the power houses as to become real property under ordinary definitions, and that, therefore, the result which I have pointed out would follow if a broad general meaning was given to the term "real property," and I cannot believe that it intended to indulge in any such hollow and self-nullifying legislation. It seems more reasonable to believe that having granted the exemptions of equipment which it did, and which included not only the articles specified but "all other equipment," it occurred to the mind that the operator during the life of the contract might acquire a large and unforeseen amount of what was essentially real property — lands and buildings — and that this might be claimed to be within the exemption. Apparently it was

considered that this would be too great an allowance, and so there was added this final clause that the exemption should "not extend to real property," it thereby being intended not to indicate the lines of machinery which had just been expressly enumerated and exempted, but this possible accumulation of what was intrinsically real property–lands and buildings which could scarcely be called "equipment," and which still might be claimed to be such under the general terms employed in the preceding clauses relating to equipment. This interpretation I believe to be permissible, and it at least gives the legislature credit for reasonable consistency and avoids the imputation which would follow the adoption of respondent's contention, that with one hand it extended as an inducement to possible contractors various exemptions from taxation while with the other it immediately withdrew them.

Of course, I do not lose sight of the principle that taxation is the rule rather than the exception and that under ordinary circumstances a statute claimed to give an exemption should be construed strictly against the one claiming benefits thereunder. As I conceive it, however, that general principle plays a small part in this case. In the first place, this is not a case of an exemption as a gratuity. The statute of which section 35 is a part provided for a contract between the city of New York and whoever should be willing to undertake it on the other side, for the construction and operation of the subway roads. It provided for the imposition upon the contractor of onerous obligations on the one hand and for rights and the possibility of profits on the other, and this exemption from taxation was not a gratuity but one of the provisions to be incorporated in the contract as an inducement to those who might consider undertaking the contract. Furthermore, there is no dispute that the legislature intended to and did make some exemption. The only question is the extent of that exemption, and this in turn

is dependent on the further query how far a general clause is to be curtailed by a proviso or exception. Under these circumstances no rule requires us to discriminate against the relator or do otherwise than give to the statute that fair and reasonable interpretation which it seems must have been within the contemplation of the parties.

On two occasions the respondents and their predecessors in office in assessing appellant have granted exemptions to the latter in line with those above discussed and approved, and while 'such action is not to be regarded as conclusive in this proceeding it does show a practical construction of the statute which is entitled to consideration.

In 1904 the relator having been assessed for its power house and sub-stations and machinery therein, instituted certiorari proceedings to review said assessment on the ground that said property was exempt from taxation. After a return by the assessors indicating doubt as to the taxability of such property and after due consideration an order was entered by consent reducing the assessments to the assessed value simply of the unimproved real estate.

Again, at the time the assessment here under review was made relator was assessed in the sum of $800,000 for tracks, tunnels, ducts, coal and ash-conveying devices, etc., lying outside of the power houses. Subsequently such assessment was voluntarily canceled on the ground "that the property assessed was owned by the City of New York in part and in part constituted personal property owned by the relator and exempt from taxation under Section 35 of the Rapid Transit Act."

The stipulation on this item is not very full, but as I understand it part of the property was exempted from taxation on the ground that while otherwise real property it was laid in streets of the city of New York and, therefore, not assessable. The property did not the less become

real property because laid in streets (Tax Law, § 2; *People ex rel. D. & F. R. R. Co.* v. *Cassity,* 46 N. Y. 46), and this theory was not tenable.   Nevertheless, if the assessors acted on this belief, although erroneous, it would prevent their action from being a practical construction of the act in accordance with the contention now made by appellant. But it still appears that other property was exempted solely on the ground that this was required by that provision of the Rapid Transit Act which has been discussed and as to such property the action of the assessors did give a practical construction to the exemption provision of the statute. From all of the description which I am able to gather of the property thus exempted, I am unable to see on what theory it was less real property or more exempt under the statute than machinery and appliances placed in the power house, and if it was exempt the latter ought to be.

I come now to the further contention made by the appellant, that the power houses are also exempt from taxation.  As has already appeared, these buildings are specifically enumerated in section 35 as part of the equipment to be supplied and which is primarily exempted from taxation, the question being whether they, as well as the machinery and other equipment of that character, may be withdrawn from the operation of the final clause that the exemption shall not extend to "real property."

It is argued that the only difference between the power houses attached to the land and machinery attached to the power houses as being or not being real property is one of degree.   This, of course, is true, but this is so many times where one thing is placed on one side of the dividing line and another on the other.   It is also argued that there was no fundamental reason why valuable machinery should be exempted from taxation because used in the operation of the road, and the power house which sheltered the machinery not be exempted.   This may or may not be strictly correct.   Possibly the legislature may have acted without deliberation and logic; but,

on the other hand, it may have reached the conclusion on further consideration that while it was willing to exempt machinery and rolling stock, it was not willing to give exemption for buildings and land which, during the lifetime of the contract, might run into enormous and unforeseen valuations. But however this may be, as we have had occasion to say in substance in the case of *People ex rel. Interborough R. Tr. Co.* v. *Williams* (200 N. Y. 93), it is not for us to decide what the legislature might have done in dealing with the proposed construction and operation of the subways. It is for us simply to determine on a fair and justifiable construction of the statute what it did do. Pursuing this course, it does not seem to me that we can fairly say that "real property," as used in the statute, did not include power houses, and, therefore, did not annul the relator's prior exemption of them.

The machinery and other equipment which I have held not to be designated as real property, as I have pointed out, is primarily and essentially personal property. It is only made real property, if at all, by the accidental process of annexation to the realty, and the interested parties may still preserve its original character notwithstanding this latter process. On the other hand, these power houses were most substantial structures, composed in large measure of brick and stone and steel and iron. They were so constructed on the land that apparently they could only be removed by utter demolition. They were primarily and essentially real property, and never had existence in any other character. They were so fundamentally real property that probably interested parties dealing with them could not, by express agreement, have given them any other character than that of real property. (*Ford* v. *Cobb*, 20 N. Y. 344, 350, 351.)

It is practically impossible to conceive of the real property withdrawn by the legislature from the exemption to taxation as consisting of vacant lots and not including

these buildings which had been erected thereon. While it is possible that the legislature may have done something different than it intended by withdrawing the houses from the exemption provision, we still must give a reasonable interpretation to the language which it used, and doing this I am unable to conclude that the term "real property" did not include them.

A single minor disagreement between the parties remains to be considered. It appears that between one of relator's power houses and the power house of the Manhattan Railway Company there was a "tie line" over which electrical power was exchanged between the two companies during the time for which this assessment was made. The relator furnished to the Manhattan Company 5,784,250 K. W. H. and received from it 3,650,850, showing a balance furnished by relator of something over 2,000,000 K. W. H., and which was about two per cent of the entire power generated by it during the time in question.

It is urged that the exemption granted by the statute only applied to such equipment as was exclusively used by the relator in operating the subway roads, and that because it furnished this comparatively small balance of power to another it was not exclusively using its equipment for the purpose designed and should not be exempted. The only finding by the court on this subject is that "the main power house was not used exclusively for the subway operation." It was stipulated, however, that "Each power house was designed for the needs of the system intended to be operated by it, and there is continuously an interchange of power due to varying conditions affecting the production and consumption of power; and in case of a break-down or extraordinarily heavy requirement of either system, the reserve capacity of the two power houses combined may be delivered to the system requiring it."

I do not think that this incidental exchange of power

resulting in the supply by the relator of an inconsequential net balance to the Manhattan Company deprived it of the benefit of any exemption which it otherwise enjoyed. It is not stipulated or found that the relator installed its equipment with any intention of manufacturing and selling a surplus of power. Apparently it only installed such equipment as business prudence and foresight required, having in view reasonable changes and growth to be expected in its business. It is easily to be seen that the arrangement by which it secured from the Manhattan Railway Company at times a large amount of power may have avoided the necessity of installing a much larger amount of equipment than was employed. The fact that in this exchange in the course of a year it furnished a little more power than it received is not sufficient at least under the findings in this proceeding to destroy the primary and substantial purpose for which the equipment was installed or the exemption predicated on that purpose. (*City of N. Y.* v. *Interborough R. T. Co.*, 125 App. Div. 437; affd., 194 N. Y. 528; *People ex rel. N. Y. Hospital* v. *Purdy*, 58 Hun, 386 ; *Temple Grove Seminary* v. *Cramer*, 98 N. Y. 121.)

The order appealed from should be modified as above indicated and the proceedings should be remitted to the Special Term for action in conformity herewith, without costs to either party.

CULLEN, Ch. J., HAIGHT, VANN, WERNER and COLLIN, JJ., concur; GRAY, J., absent.

Ordered accordingly.

HISCOCK, J. This appeal involves the assessment made against the relator for 1906. With one exception the facts are so similar to those involved in the appeal relating to the assessment for the preceding year and considered in our opinion on that appeal that there is no necessity for discussing them. The only respect in which the facts differ is in the supplying of electrical

power by relator to other parties. During the year 1906 the balance of electrical power supplied by it to the Manhattan Railway Company, over the tie line running between power houses of the two companies amounted to a little over 100,000 K. W. H. During the same time it supplied to the New York City Interborough Railway Company 344,931 K. W. H. and to the Queens County Railway Company 486,400 K. W. H. The total amount generated by the relator during the period was 142,188,750 K. W. H. The supply to the latter companies was under a prior agreement that relator out of its surplus current not required in the operation of lines of railroad, owned, leased or operated by it would furnish electricity to enable them respectively to operate their lines of road. .It appeared by the stipulation as in the other case in substance that relator's power house was designed for the needs of the system intended to be operated by it, and that during the year 1906 it had at all times on hand machinery and equipment capable of producing electrical current in excess of its immediate requirements and that the current furnished to the other companies was surplus current not required by the relator in the proper operation of its road. The only finding by the court was as in the other case that its main power house was not used exclusively for subway operation. There was no finding or stipulation that relator installed equipment in excess of what was reasonable and proper in the exercise of reasonable prudence and foresight for the purpose of enabling it to sell power. Apparently it sold an inconsequential amount of power produced at times in excess of its requirements by equipment which at other times or in the near future it might be required to use to its full capacity for the proper operation of its road. I do not think that the additional facts developed on this point justify any differentiation between the two cases. Of course it is not intended to say that facts might not appear or findings be made indicating a distinct plan on the part of the relator to install equip-

ment beyond what was reasonable for its legitimate purposes with the object of generating and selling power at a profit. In such a case different considerations would be presented to us. We simply think that on the present appeal no such situation is presented.

The order appealed from should be modified as above indicated and the proceedings should be remitted to the Special Term for action in conformity herewith, without costs to either party.

· CULLEN, Ch. J., HAIGHT, VANN, WERNER and COLLIN, JJ., concur; GRAY, J., absent.

· Ordered accordingly.