306 Wall St. Owners, LLC v City of Kingston (2025 NY Slip Op 05134)

306 Wall St. Owners, LLC v City of Kingston

2025 NY Slip Op 05134

Decided on September 25, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:September 25, 2025

CV-25-0145
[*1]306 Wall Street Owners, LLC, et al., on Behalf of Themselves and All Others Similarly Situated, Appellants,
v
City of Kingston, Respondent.

Calendar Date:August 14, 2025

Before:Lynch, J.P., Ceresia, Fisher, Powers and Mackey, JJ.

Young/Sommer LLC, Troy (William A. Hurst of counsel), for appellants.
Barbara Graves-Poller, Corporation Counsel, Kingston, for respondent.

Lynch, J.P.
Appeal from an order of the Supreme Court (David Gandin, J.), entered January 28, 2025 in Ulster County, which, among other things, granted defendant's cross-motion to dismiss the complaint.
In 1969, the artist John Pike, in conjunction with the Kingston Historic Landmarks Preservation Commission (hereinafter HLPC), proposed a preservation-inspired urban renewal project that involved the installation of a contiguous row of 19th-century-style wooden canopies on several storefronts in the City of Kingston, Ulster County. The proposal, known as the Pike Plan, called for the Kingston Urban Renewal Agency (hereinafter KURA) to obtain easements from impacted property owners. To that end, each of the property owners entered into a Memorandum of Agreement (hereinafter MOA) with KURA and defendant, providing KURA with an easement to construct the canopies over the sidewalks and attach same to the front facades of their respective buildings for support. Thereafter, KURA constructed canopies on over 40 storefronts in the Stockade District — an eight-block area located within an Architectural Design District.
In 2011, defendant became the successor in interest to KURA and embarked on a restoration process to address deterioration of the canopies that had developed in the decades since their installation. Despite these efforts, substantial deterioration persisted into 2024. During a meeting before the Finance and Audit Committee of defendant's Common Council held in July 2024, defendant's Mayor proposed removing the canopies and restoring the impacted storefronts to their historic facades, submitting a draft resolution to allocate $1.2 million for the first phase of the project.
Plaintiffs — a group of property owners with Pike Plan canopies attached to their properties — commenced this class action challenging the Mayor's plan and separately moved for a temporary restraining order and a preliminary injunction to preclude any removal action. Plaintiffs' first cause of action seeks a declaration that the Pike Plan canopies are "permanent" and "immovable fixture[s]" that cannot be removed from their properties without their consent, along with a permanent injunction precluding demolition. Plaintiffs' second cause of action seeks a declaration that the canopies "cannot be altered in any way until, at a minimum, the HLPC [local historic landmark designation] process has concluded" under Chapter 264 of the City of Kingston Code, emphasizing that this code chapter requires the HLPC to issue a Certificate of Recommendation before defendant can make exterior alterations in an Architectural Design District.[FN1]
Defendant opposed plaintiffs' request for preliminary injunctive relief and cross-moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7). As pertinent here, following a court conference, Supreme Court denied plaintiffs' request for preliminary injunctive relief, granted defendant's cross-motion and dismissed the complaint. Relying on the plain language [*2]of the written agreements memorializing the Pike Plan easements, the court concluded, as a matter of law, that "the Pike Plan canopies were intended to remain City property" and were not immovable fixtures. As for plaintiffs' second cause of action seeking declaratory relief under Chapter 264 of the City Code, Supreme Court noted that this code chapter was repealed by Common Council Resolution 157 of 2024, dated September 10, 2024, rendering the requested relief no longer viable. Plaintiffs appeal.[FN2]
Plaintiffs contend that Supreme Court applied an overly restrictive standard in assessing the viability of the complaint at the pre-answer stage and erroneously concluded as a matter of law that they have no legal basis for declaratory relief. We disagree. "The sole issue presented in determining a pre-answer motion to dismiss adeclaratory judgment action is whether the plaintiff[s] [have] set forth a cause of actionfor declaratory relief, without consideration as to whether [they] will ultimately succeedon the merits of the action" (Salvador v Town of Queensbury, 162 AD3d 1359, 1360 [3d Dept 2018] [citations omitted]). That said, a " 'court may reach the merits of a properly pleaded cause of action for a declaratory judgment [at the pre-answer phase] where no questions of fact are presented by the controversy' " (Matter of Schulz v State of New York, 216 AD3d 21, 29 [3d Dept 2023], appeal dismissed 40 NY3d 1004 [2023], cert denied ___ US ___, 144 S Ct 1461 [2024], quoting Sullivan v New York State Joint Commn. on Pub. Ethics, 207 AD3d 117, 124 [3d Dept 2022]).
A motion pursuant to CPLR 3211 (a) (7) assesses "whether the proponent of the pleading has a cause of action, not whether [they have] stated one" (Leon v Martinez, 84 NY2d 83, 88 [1994] [internal quotation marks and citation omitted]). When analyzing as much, the court affords the complaint "a liberal construction, accepting the allegations contained therein as true and affording [the] plaintiff the benefit of every favorable inference" (Salvador v Town of Queensbury, 162 AD3d at 1361; see Rushaid v Pictet & Cie, 28 NY3d 316, 327 [2016]). "Additionally, a court may grant a motion seeking dismissal pursuant to CPLR 3211 (a) (1) only where the documentary evidence utterly refutes the plaintiff[s'] factual allegations, conclusively establishing a defense as a matter of law" (Colt v Nathan Littauer Hosp., 236 AD3d 1216, 1217 [3d Dept 2025] [internal quotation marks, brackets and citations omitted], lv denied ___ NY3d ___ [Sept. 18, 2025]).
After reviewing the MOAs pertaining to the Pike Plan canopies — which constitute documentary evidence within the meaning of CPLR 3211 (a) (1) (see Fontanetta v John Doe 1, 73 AD3d 78, 84-85 [2d Dept 2010]; David D. Siegel & Patrick M. Connors, New York Practice § 259 [6th ed]) — we agree with Supreme Court that no viable cause of action lies with respect to plaintiffs' fixture claim. "To meet the common-law definition of fixture, the personalty in question [*3]must: (1) be actually annexed to real property or something appurtenant thereto; (2) be applied to the use or purpose to which that part of the realty with which it is connected is appropriated; and, (3) be intended by the parties as a permanent accession to the freehold" (Matter of Metromedia, Inc. [Foster & Kleiser Div.] v Tax Commn. of City of N.Y., 60 NY2d 85, 90 [1983] [citations omitted]; accord Barber v Crout-Woodard, 224 AD3d 966, 968 [3d Dept 2024]). The test is flexible and takes into account the particular circumstances of each case (see People ex rel. Interborough R.T. Co. v O'Donnel, 202 NY 313, 318 [1911]). While all three factors should be considered, the intent of the parties and not the manner of annexation is often controlling (see id. at 318-319; Barber v Crout-Woodard, 224 AD3d at 968-969; Mastrangelo v Manning, 17 AD3d 326, 327 [2d Dept 2005]; South Seas Yacht Club v Board of Assessors & Bd. of Assessment Review of County of Nassau, 136 AD2d 537, 538 [2d Dept 1988]). Importantly, the character of the property may also be defined by agreement between the parties (see People ex rel. Interborough R.T. Co. v O'Donnel, 202 NY at 319; Tifft v Horton, 53 NY 377, 383 [1873]).
Here, the MOAs granted KURA an easement to "construct [a] canopy along the sidewalk portion of the [buildings owned by plaintiffs' predecessors in title]" and to attach the canopies to the facades of the buildings. The easements were described as "perpetual . . . covenant[s] running with the land," but "no part of the fee of the soil upon which the canopy or its supports" were to stand would "pass to or be vested in [KURA] or its assigns." Plaintiffs' predecessors in title were referred to as the "owner[s] of [the] propert[ies] specifically benefitted by such canopy structures," and they "acknowledge[d] that the . . . structure[s] [were] a street and sidewalk appurtenance subject to repair and maintenance assessments imposable against [them] under Section 145 of the Kingston Charter, being Chapter 747 of the Laws of 1896[,] . . . for the operational and maintenance costs incurred by . . . said [m]unicipality."
As referenced in the agreements, a copy of the 1896 Kingston Charter is contained in the record and constitutes documentary evidence within the meaning of CPLR 3211 (a) (1) (see Salus v Berke, 221 AD3d 1390, 1392 [3d Dept 2023]). Notably, section 145 of this version of the charter pertained to the imposition of assessments against districts benefitted by a municipal improvement made by means of condemnation or through the acquiring of an easement.
Turning to the first prong of the common-law fixture test, there is no question that the canopies have been "actually annexed to [plaintiffs'] real property" for several decades (Matter of Metromedia, Inc. [Foster & Kleiser Div.] v Tax Commn. of City of N.Y., 60 NY2d at 90). Even so, the canopies were not erected for the "use or purpose" of the buildings to which they are attached (id.). Rather, as demonstrated [*4]by the agreements' reference to section 145 of the 1896 Kingston Charter and description of the canopies as "street and sidewalk appurtenance[s]," the canopies were erected as part of a municipal improvement project to provide a district-wide benefit to the public at large (compare Gould v Springer, 206 NY 641, 646 [1912]; McRea v Central Natl. Bank of Troy, 66 NY 489, 494-495 [1876]). That the canopies also provided a special benefit to plaintiffs, as the owners of the buildings to which they are affixed, does not negate their primary municipal purpose.
Moreover, the plain language of the MOAs, which is the best evidence of the parties' intent (see generally Greenfield v Philles Records, 98 NY2d 562, 569 [2002]), refutes plaintiffs' contention that the canopies were intended to become "permanent accession[s] to the freehold[s]" (Matter of Metromedia, Inc. [Foster & Kleiser Div.] v Tax Commn. of City of N.Y., 60 NY2d at 90). To the contrary, the agreements carefully delineated the parties' rights and responsibilities relative to the canopies, referencing plaintiffs' ownership interest only in regard to the real property and soil on which the canopies were attached. At the same time, defendant was authorized to impose annual assessments on the property owners for the "operational and maintenance costs incurred by" defendant for the upkeep of the improvements. Defendant's responsibility for the upkeep demonstrates its retained ownership interest in the canopy structures (see generally Girard Ins. Co. v Taylor, 6 AD2d 359, 361 [3d Dept 1958]).[FN3] More importantly, having defined the "canopy structure" as a "street and sidewalk appurtenance," the parties to the MOAs confirmed defendant's retained ownership interest. An "appurtenance" is defined as "[s]omething that belongs or is attached to something else; esp., something that is part of something else that is more important
" (Black's Law Dictionary [12th ed 2024], appurtenance). By choosing to define the canopy as part of the streetscape, and not the building to which the canopy was attached, the parties established that ownership was vested in defendant. Contrary to plaintiffs' argument, the fact that tax assessments could be levied upon property owners benefitted by a municipal improvement does not confer an ownership interest in the municipal improvement itself. Moreover, by Resolution 188 of 2017, passed in September 2017, defendant relieved plaintiffs from any further tax assessments or maintenance costs pertaining to the canopies. On this record, Supreme Court properly concluded that the documentary evidence "utterly refutes" the viability of plaintiffs' first cause of action seeking a declaration that the Pike Plan canopies are permanent fixtures belonging to plaintiffs (Colt v Nathan Littauer Hosp., 236 AD3d at 1217 [internal quotation marks and citations omitted]).[FN4]
Plaintiffs alternatively argue that, even if defendant owns the Pike Plan canopies, [*5]there is a question of fact regarding whether they can be removed under the terms of the MOAs. In that regard, plaintiffs emphasize that the written agreements conferred upon defendant maintenance obligations with respect to the canopies and described the easements as "perpetual . . . covenant[s] running with the land." Even so, this does not preclude defendant, as the dominant estate (see generally Camp Bearberry, LLC v Khanna, 212 AD3d 897, 898 [3d Dept 2023]), from relinquishing the benefit derived from the easements (see generally Board of Mgrs. of the 190 Meserole Ave. Condominium v Board of Mgrs. of the 188 Meserole Ave. Condominium, 191 AD3d 629, 631 [2d Dept 2021]).
Plaintiffs do not challenge the dismissal of their second cause of action under Chapter 264 of the City of Kingston Code, which, as noted by Supreme Court, has since been repealed.[FN5] Having properly concluded that plaintiffs lack any viable claim for the declaratory relief they seek and that no question of fact is presented by the controversy, Supreme Court should have rendered a declaration in defendant's favor instead of dismissing the complaint (see Matter of Schulz v State of New York, 216 AD3d at 29). We will modify the judgment accordingly and declare that defendant is the owner of the Pike Plan canopies (see id.). In light of our determination, plaintiffs' argument that Supreme Court erred in denying their motion for injunctive relief is unavailing (see Pickard v Campbell, 207 AD3d 1105, 1110 [4th Dept 2022], lv denied 39 NY3d 910 [2023]).
Ceresia, Fisher, Powers and Mackey, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as dismissed the complaint; it is declared that the Pike Plan canopies are owned by defendant and are not immovable fixtures; and, as so modified, affirmed.

Footnotes

Footnote 1: Plaintiffs commenced several other actions pertaining to the Pike Plan, including one seeking damages for defendant's alleged negligent maintenance of the canopies. That action is pending in Supreme Court.

Footnote 2: This Court granted plaintiffs' motion for a stay and preliminary injunction precluding defendant from "demolish[ing], damag[ing] or remov[ing] the 'Pike Plan' [canopies] during the pendency of the appeal," but permitted defendant to undertake routine maintenance and repair of the Pike Plan canopies (2025 NY Slip Op 64785[U] [3d Dept 2025] [internal quotation marks omitted]).

Footnote 3: Inconsistent with their fixture claim, we also note that plaintiffs represented in prelitigation correspondence and in their notices of claim that the canopies were "owned by the City."

Footnote 4: Plaintiffs' contention that Supreme Court prematurely dismissed the first cause of action without considering a December 2024 determination of the State Historic Preservation Office concluding that the Pike Plan canopies are eligible for listing on the State and National Registers of Historic Places does not raise a question of fact on the viability of plaintiffs' fixture claim.

Footnote 5: In their memorandum of law to this Court in support of their motion for a temporary restraining order and a stay pending appeal, plaintiffs initially argued that Supreme Court misunderstood the record in dismissing their second cause of action, as "all the same provisions from Chapter 264 [of the Code] have been re-codified" in different code sections. However, in their subsequently-filed reply papers, plaintiffs represented that they had "no intention of further appealing the trial court's dismissal of the complaint's second cause of action." Consistent with that representation, plaintiffs do not explicitly challenge the denial of their second cause of action in their brief on appeal.